UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SAMAAD KELLY, | : : : | |
| Petitioner, | : : | Civil Action No. 21-19855 (BRM) |
| v. | : : : | OPINION |
| UNITED STATES OF AMERICA, | : : : | |
| Respondent. | : : : | |

Before the Court is Petitioner Samaad Kelly's ("Petitioner") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 3 at 5-10, "Motion".) Following an order to answer, the Government filed a response to the Motion. (ECF No. 13.) For the reasons set forth below, Petitioner's § 2255 Motion is **DENIED** and a certificate of appealability will not issue.

**I. BACKGROUND**

On May 10, 2019, Petitioner was charged by complaint with two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Crim. No. 20-511, ECF No. 1.) On May 16, 2019, at Petitioner's initial appearance, the Court appointed Attorney Lisa Mack, from the Federal Public Defender for the District of New Jersey to represent Petitioner. (*Id.*, ECF No. 6.) On March 6, 2020, a superseding criminal complaint charged Petitioner with two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Counts One and Three), and one count of possession of ammunition by a convicted felon, in violation of 18 U.S.C. 922(g)(1) (Count Two). (*Id.*, ECF No. 13.) On June 15, 2020, Petitioner waived his right

to prosecution by indictment and consented to proceeding by information containing the same three counts. (*Id.*, ECF Nos. 18, 19.)

The Presentence Investigation Report summarized the events that led to the filing of charges against Petitioner as follows:

> On the evening of April 24, 2019, officers from the Essex County Sherriff's Office received information that [Petitioner] was in possession of a firearm in Newark, New Jersey and was driving a silver BMW bearing a temporary New Jersey registration tag. In response, officers were dispatched and proceeded to the vicinity of Astor Street in Newark. While patrolling the area, the sheriff's officers observed a silver BMW with a temporary registration and tinted front windows. The latter is a New Jersey traffic violation. The officers conducted a motor vehicle stop of the BMW and ran an inquiry of the vehicle's registration number which returned no results.
>
> During the stop, a female passenger exited the car and the officers immediately advised her to remain inside of the car. As the sheriff's officers approached the BMW, they detected the odor of burnt marijuana emanating from within the vehicle.
>
> [Petitioner], who was driving the BMW, advised officers of his name. He claimed he had just purchased the vehicle and could not provide identification, registration, or insurance. Based on the fictitious registration, the odor of narcotics, and [Petitioner] not having any credentials, the officers asked [Petitioner] to exit the BMW and they arrested him. The female passenger and her minor child, seated in the back seat of the BMW, exited the vehicle.
>
> During a search of the BMW, officers recovered a Taurus semi-automatic 9-millimeter handgun, model 709 Slim, bearing serial number TJX24023 and approximately 50 yellow empty vials from the glove box.
>
> After waiving his *Miranda* rights, [Petitioner] claimed ownership of the firearm and he was arrested. On May 2, 2019, [Petitioner] was released on bail.
>
> Five days later, on May 7, 2019, officers of the Newark, New Jersey Police Department responded to a report of shots fired near Astor Street/Sherman Avenue. Upon their arrival, they located a 9-mm discharged shell casing in front of 40 Sherman Avenue, and one 9-

mm round of live ammunition across the street from 40 Sherman Avenue.

As part of the investigation into the shooting, law enforcement reviewed surveillance camera video footage of the incident. The May 7, 2019 video footage shows [Petitioner] in front of 40 Sherman Avenue holding a black handgun. [Petitioner] pointed and fired the handgun in the direction of an unknown individual. The video also shows [Petitioner] walk across the street near an empty parking lot, where he attempted to fire the handgun, which appears to jam. [Petitioner] cleared the jam, which ejected a live round of 9-mm ammunition. [Petitioner] then walked west on Astor Street, out of view of the surveillance camera.

Law enforcement determined that the 9-mm shell casing and the 9-mm round of live ammunition were both manufactured outside the state of New Jersey. Thus, the shell casing and round of ammunition moved in interstate commerce prior to being possessed by [Petitioner] on May 7, 2019.

On May 10, 2019, Newark Police Department detectives were patrolling an area where there had been several recent shootings, one of which was a recent as the day before – May 9, 2019.

One of the detectives observed [Petitioner], walking on Brunswick Street wearing a black heavily weighted fanny pack/pouch around his waist. Aware that fanny packs are often used to carry firearms, drugs, and drug paraphernalia, the detective approached [Petitioner] to investigate further. Upon seeing the officers, [Petitioner] immediately fled on foot and the detectives pursued him.

As [Petitioner] fled, he unclipped the fanny pack from his waist and held it in his right hand. As the detectives got closer, [Petitioner] attempted to throw the fanny pack over a fence. As [Petitioner] was throwing the fanny pack, he slipped and fell to the ground. The detectives apprehended him and recovered the pouch.

Officers recovered a Ruger, Model P85, 9-millimeter, semi-automatic pistol, bearing serial number 300-93603, loaded with 10 rounds of 9-millimeter ammunition and approximately seven vials of crack cocaine and one bag of crack cocaine from the pouch.

[Petitioner] was arrested and was charged with unlawful possession of a weapon, possession of a weapon while committing CDS offenses, possession of seven jugs of crack cocaine and approximately 2.8 grams of crack cocaine, possession of crack

> cocaine with intent to distribute it, possession of CDS with intent to distribute within 500 feet of public housing, possession of CDS with intent to distribute within 1000 feet of public school, and resisting arrest by flight.

(Presentence Service Report ("PSR") at ¶¶ 11-23.) These offenses were subsequently dismissed locally in lieu of the federal prosecution here. (*Id.* at ¶ 24.)

On June 15, 2020, pursuant to a negotiated Rule 11(c)(1)(C) Plea Agreement, Petitioner pled guilty before the Honorable Esther Salas, U.S.D.J. ("Judge Salas"), to the three-count Information, charging him with two counts of possessing firearms as a convicted felon for the April 24th and May 10th incidents (Counts One and Three) and possessing ammunition as a convicted felon for the May 7th shooting. (Count Two) (*See* ECF No. 13-3.) Pursuant to the Plea Agreement, the parties agree, pursuant to Rule 11(c)(1)(C), that, should the Court accept the Plea Agreement, the Court would be bound to sentence Petitioner to a term of imprisonment within the range of 60 to 90 months and 3 years of supervised release. (*See* ECF No. 13-1.)

Prior to sentencing, the U.S. Probation Office determined that the three counts in the Information grouped to form a single offense level and used the count which produced the highest offense level to determine the offense level calculation. (PSR at ¶¶ 29, 34.) With a total offense level of 15 on that single count, and a criminal history category of IV, Petitioner's advisory guidelines range was 30 to 37 months' imprisonment. (PSR at ¶¶ 44, 96.)

Petitioner did not seek to withdraw his plea. On November 9, 2020, in accordance with the terms of the Plea Agreement, this Court sentenced Petitioner to 80 months' imprisonment, followed by a three-year term of supervised release. (ECF No. 13-6.)

On December 14, 2021, Petitioner filed his § 2255 Motion arguing ineffective assistance of plea counsel because counsel, after estimating a guideline range of 100 to 130 months, advised

Petitioner to accept the 60 to 90-month Plea Agreement, when the PSR ultimately calculated a guideline range of 30–37 months. (ECF No. 3 at 7.)

## II. LEGAL STANDARD

### A. 28 U.S.C. § 2255

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides in relevant part that:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied*, 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458–59 (D.N.J. 2003). A district court must hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255(b); *see also United States v. Booth*, 432 F.3d 542, 545–46 (3d Cir. 2005).

### B. Ineffective Assistance of Counsel

The United States Supreme Court has set forth a two-part test by which courts must evaluate claims of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). First, Petitioner must show that "counsel's performance was deficient," which means that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." *Id.* at 687. Specifically, counsel's performance is deficient if his representation falls "below an objective standard of reasonableness." *Id.* at 688. In examining the question of deficiency, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. As such, "the petitioner bears the burden of showing that counsel's challenged action was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

Next, Petitioner must show that the deficient performance prejudiced her. *Strickland*, 466 U.S. at 687. Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Where, as here, the petitioner entered into a guilty plea, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

With respect to the sequence of the two prongs, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Instead, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.'" *Id.*; *see also Rainey v. Varner*, 603 F.3d 189, 201 (3d. Cir. 2010).

### III.  DECISION

Petitioner claims that he received ineffective assistance from his plea counsel, Attorney Mack. (*See* ECF No. 3.) Specifically, Petitioner argues that counsel's advice to accept the Plea Agreement, with an agreed sentence range of 60 to 90 months, was "erroneous, unfavorable, and

not in [his] best interest," because the U.S. Probation ultimately calculated Petitioner's Sentencing Guidelines range at 30 to 37 months. (*See id.* at 18–19.) Petitioner claims that he was prejudiced by plea counsel's performance because Attorney Mack incorrectly advised Petitioner that his Sentencing Guideline range was 100 to 120 months, and, therefore, he believed a stipulated sentence to 60 to 90 months was in his best interest. (*Id.* at 19.)

The established test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). Where a defendant is represented by counsel and enters a guilty plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

The Supreme Court held in *Hill* that a claim of ineffective assistance of counsel in the context of a guilty plea is subject to the same standard of attorney competence set forth in the first prong of the *Strickland* test. 474 U.S. at 58–59. However, the *Hill* Court specifically held that where the collateral challenge is to a plea of guilty rather than a trial verdict, the "prejudice" prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

Petitioner cannot show that there is a reasonable probability that "but for" Attorney Mack's incorrect sentencing guidelines prediction, Petitioner would not have pleaded guilty and would have insisted on going to trial. Attorney Mack certifies that she advised Petitioner that because he was pleading guilty to the charges in the Information, the Essex County Prosecutor's Office agreed not to pursue drug charges against Petitioner or charges related to the shooting incident, which

could have included aggravated assault. (ECF No. 13-7 ¶¶ 8e, f, Declaration of Lisa M. Mack, Esq.) Plea counsel also advised Petitioner that if he was convicted on Count Two, the Government could seek a sentencing enhancement based on the aggravated assault. (*Id.* ¶ 8e) Petitioner was also advised that because the offense involved possession of drugs and a gun, "the Government could have pursued a charge of 18 U.S.C. § 924(c), which carries a mandatory consecutive minimum sentence of five years, but that he would not be charged with that offense under the plea agreement." (*Id.* ¶ 8f.) Additionally, Attorney Mack declares that Petitioner was facing a potential 10-year sentence with a minimum of 85% to be served for the gum and drug charges in state court, which the state agreed to drop if he pled guilty to the offenses federally. (*Id.* ¶ 8g.)

Petitioner signed a Plea Agreement, which explained that in exchange for Petitioner's guilty plea, the Government agreed not to bring any further charges against Petitioner for: "(i) possessing firearms or ammunition on or about April 24, 2019, May 7, 2019, and May 10, 2019, in Essex County New Jersey, after having been convicted of a felony; (ii) assault or aggravated assault on or about May 7, 2019, or (iii) possessing cocaine and cocaine base on or about May 10, 2019." (ECF No. 13-1 at 1.) The Plea Agreement also explained that the three counts in the Information each carried "a statutory maximum prison sentence of 10 years." (*Id.* at 2.)

Petitioner also signed an Application for Permission to Enter Plea of Guilty, in which he acknowledged that Attorney Mack informed him that he was facing a maximum of 10 years imprisonment on each count charged in the Information. (ECF No. 13-2 at 3–4.)

At sentencing, the Government also laid out the potential charges Petitioner could face without the Plea Agreement as follows:

> And, first, I'll just point out that, even though the [Petitioner] has pled to a three-count information, these are really three separate firearms and ammunition offenses that the Government could have charged each separately and tried them separately, and [Petitioner]

8

> could be facing three separate sentencings, which could possibly include even consecutive sentences on all these charges.
>
> But in exchange for that, the Government has agreed to accept the plea to the three-count information and has made several charging concessions for that.
>
> And I'll just quote the language from the plea agreement just so it's clear on the record.
>
> In exchange, the Government agrees not to initiate any further criminal charges against [Petitioner] for possessing firearms or ammunition, on or about April 24, 2019; May 7, 2019; and May 10, 2019; also for assault or aggravated assault, on or about May 7, 2019; or for possessing cocaine and cocaine base, on or about May 10, 2019.
>
> And that's all, you know, notwithstanding the fact that the information is purely just for the firearms and ammunitions offenses, not for any drug offenses, not for any -- not any 924(c) charges, for possessing firearms in furtherance of drug trafficking offenses, which, in and of itself, would be a five-year mandatory minimum, in addition to all other charges.
>
> And so, notwithstanding all of that, in light of the Section 3553(a) factors, the Government believes that the stipulated range of 60 to 90 months is reasonable.

(ECF No. 13-6 at 18:14 to 19:16.)

    Petitioner was facing a statutory mandatory maximum of 10 years imprisonment on each of the three charges if Petitioner proceeded to trial. The Government indicated that it could have initiated charges on each of the three counts in the Information separately. Because the offense involved possession of drugs and a gun, the Government could have pursued a charge of 18 U.S.C. § 924(c), which carries a mandatory consecutive minimum sentence of five years. The Government agreed not to bring any assault or drug charges against Petitioner for the offenses at issue. Additionally, Petitioner's state charges, for which he faced a potential 10-year sentence, were dropped in return for him pleading guilty here. Considering all of Petitioner's potential charges

and the sentencing possibilities, Petitioner cannot show that "but for" Attorney Mack's incorrect prediction regarding the potential sentencing guidelines range, he would not pleaded guilty and would have proceeded to trial. *Hill*, 474 U.S. at 58–59.[1]

Additionally, the Court of Appeals for the Third Circuit has held that "an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where . . . an adequate plea hearing was conducted." *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007); *Sepulveda v. United States*, 69 F. Supp. 2d 633, 641 (D.N.J. Sept. 28, 1999) (citing *Masciola v. United States*, 469 F.2d 1057, 1059 (3d Cir. 1972) ("[A]n attorney's mere inaccurate prediction of the sentence does not demonstrate the deficiency component of an ineffective assistance of counsel claim.")). A defendant's right to be apprised of the court's sentencing options is set forth in Federal Rule of Criminal Procedure 11(c)(1). Fed. R. Crim. P. 11(c)(1). Rule 11 provides in pertinent part:

> (1) Advising and Questioning the Defendant. Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:
>
> > (G) the nature of each charge to which the defendant is pleading;
> >
> > (H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;

---

[1] Petitioner also argues that if Attorney Mack had properly investigated Petitioner's Guidelines range, counsel would have been in a position to negotiate a more favorable plea offer. (ECF No. 3 at 18.) A petitioner may establish prejudice by showing "that but for his counsel's purported errors, he would have gone to trial, received a more favorable plea deal, or have been better off pleading guilty without the benefit of a plea agreement." *Boye v. United States*, 810 F. App'x 118, 121 (3d Cir. 2020). In their Answer, Respondents indicate that the Plea Agreement here was the most favorable of three offers made to plea counsel. (ECF No. 13 at 9.) Based on the above summarized potential charges and sentences Petitioner was facing, he cannot show that if had Attorney Mack predicted that the three counts in the Information combined for a Guideline Sentencing Range of 30 to 37 months, the Government would have offered a more favorable plea deal.

>> (I) any mandatory minimum penalty;
>
> . . .
>
> (M) in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a);
>
> . . .
>
> (2) Ensuring That a Plea is Voluntary. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement).

Fed. R. Crim. P. 11(b) (eff. Dec. 1, 2013).

Where a district court, at the plea colloquy, advises a defendant of both the minimum and maximum potential sentence under the statute, and explains the guidelines sentencing process, including that the court has discretion in sentencing, and where a defendant confirms under oath that there are no other agreements or promises regarding his potential sentence, there can be no ineffective assistance of counsel. *Shedrick*, 493 F.3d at 299; *see United States v. Mustafal*, 238 F.3d 485, 492 (3d Cir. 2001) ("[A]ny alleged misrepresentations that Mustafa's former counsel may have made regarding sentencing calculations were dispelled when Mustafa was informed in open court that there were no guarantees as to sentence, and that the court could sentence him to the maximum.").

Attorney Mack acknowledges that she provided Petitioner with different Guidelines offense level calculations and sentencing ranges to "account for potential varying charging and sentencing scenarios." (ECF No. 13-7 ¶ 8b, Decl. of Lisa M. Mack, Esq.) Attorney Mack declares that the estimates she gave Petitioner:

> [I]ncluded calculations based on convictions for one, two or three counts of weapons possession; included different offense levels, potential enhancements, and cross-applications of the Guidelines; and used criminal history categories of IV, V, and VI. These calculations resulted in estimated Guidelines ranges that included ranges of 84 to 105 months' imprisonment, 100 to 125 months' imprisonment, and 110 to 137 months' imprisonment.

(*Id.* ¶ 8c.) Attorney Mack also declared that she advises her clients that her Guidelines' calculations are only estimates and that both the U.S. Probation Office and the Court could reach a different result. (*Id.* ¶ 8d.) Petitioner also signed an Application for Permission to Enter Plea of Guilty, in which he acknowledged that Attorney Mack informed him that he was facing a maximum of 10 years imprisonment on each count charged in the Information. (ECF No. 13-2 at 3–4.)

Based on Attorney Mack's declaration, counsel provided Petitioner with potential sentencing guideline ranges based on the possible different charges Petitioner could face. However, even if the Court found that Attorney Mack misinformed Petitioner about his sentencing guideline range on the three counts in the Information alone, Judge Salas' colloquy cured any defects in counsel's advice. *See e.g.*, *United States v. Delbridge*, 504 F. App'x 145, 150 (3d Cir. 2012) (holding that any inaccurate statements by defense counsel about sentencing were irrelevant because the defendant was advised of the maximum sentence, the Guidelines range applicable to his case, and the advisory nature of the Guidelines during the plea colloquy). Judge Salas conducted a thorough and adequate plea colloquy. (*See generally* ECF No. 13-3.) First, Judge Salas advised Petitioner that the statute under which he was charged in the Information sets for a maximum of 10 years imprisonment and that if the Judge accepted the plea the court was "bound to sentence [Petitioner] to a term or a range of 60 to 90 months, with three-years supervised release." (*Id.* at 31:17–22.) Judge Salas explained to Petitioner that the sentencing guidelines require the court to "take into account the actual conduct in which [Petitioner] engaged, to consider

the victim of [his] offense, if any, the role that [he] played, or whether or not [he] [] engaged in the obstruction of justice or have accepted responsibility for [his] acts." (*Id.* at 32:7–12.) Judge Salas also advised Petitioner that under normal circumstances the court could deviate from the guideline range but with a Rule 11(c)(1)(C) plea, the court is bound by the agreed range. (*Id.* at 32:20-23.) Judge Salas informed Petitioner that it was "impossible" for the court to know if it would except the plea or what Petitioner's sentence would be until the presentence report was completed. (*Id.* at 33:1 to 34:14.) Finally, Petitioner assured Judge Salas that no one has "made any different promises or assurance to [Petitioner] of any kind to get [him] to plead guilty." (*Id.* at 27:20–22.)

At sentencing, the Court explained that in determining the sentence, the Court must consider "the nature and circumstances of the offense and history and characteristics of the defendant, the kinds of sentences available, the guideline and the guideline range, [and] the guideline policy statement." (ECF No. 13-6 at 24:7–10.) The Court considered Petitioner recidivism and noted Petitioner needed deterrence and the public needed to be protected from future crimes of Petitioner. (*Id.* at 26:13–23.) The Court also considered a letter from Petitioner and Attorney Mack's "convincing argument" and sentenced Petitioner to 80-months imprisonment and three years supervised release, which was in the Rule 11(c)(1)(C) agreed upon 60 to 80 months range. (*Id.* at 27:3 to 28:6.) There is nothing inconsistent with Judge Salas' discussion of sentencing during the plea colloquy and Petitioner's ultimate sentence. Thus, Petitioner's claim fails to state a claim of ineffective assistance of counsel. *Shedrick*, 493 F.3d at 299 (holding "defense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion").

## IV. Certificate Of Appealability

Pursuant to 28 U.S.C. § 2253(c), the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason could not disagree with this Court's conclusion, Petitioner has failed to make a substantial showing of the denial of a constitutional right, and no certificate of appealability shall issue.

## V. Conclusion

For the reasons stated above, Petitioner's motion to vacate sentence (ECF No. 3) is **DENIED** and Petitioner is **DENIED** a certificate of appealability. An appropriate order follows.

Dated: December 23, 2024

>*/s/Brian R. Martinotti*
>**HON. BRIAN R. MARTINOTTI**
>**United States District Judge**